UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61680-Civ-SEITZ
MAGISTRATE JUDGE P.A. WHITE

ROLAND PALMER,                    :

    Petitioner,              :

v.                               :        REPORT OF
                                          MAGISTRATE JUDGE
WALTER A. McNEIL,                :

    Respondent.              :
_____

Roland Palmer, a state prisoner confined at Moore Haven Correctional Facility, at Moore Haven, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging his convictions entered in Case No. 99-22572 in the Seventeenth Judicial Circuit Court of Florida, at Broward County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with attached exhibits and supporting memorandum of law (DE# 1, 2), the Court the respondent's response to an order to show cause with multiple exhibits (DE# 12, 13).

Palmer alleges that he received ineffective assistance of trial counsel, because his lawyer failed to (1) file a pre-trial motion to suppress his confession/statements based upon an

inadequate *Miranda*[1]-warning; (2) object and challenge for cause biased juror Joanie Walker; and (3) investigate the facts of the case and subpoena and call two exculpatory witnesses to testify for the defense at trial. Palmer further claims that the cumulative effect of trial counsel's errors deprived him of his state and federal constitutional rights to due process of law.

The pertinent procedural history of this case is as follows.[2] Palmer was convicted after jury trial of attempted carjacking (Count I), battery on a law enforcement officer (Count II), and tampering with physical evidence (Count III). See Palmer v. McNeil, 08-60078-Civ-Seitz at DE# 10; Ex. 3). He was sentenced as to Count I to a term of imprisonment of twenty years as a habitual felony offender and prison releasee reoffender, as to Count II to a term of seven years as a habitual felony offender and prison releasee reoffender, and as to Count III to a term of five years as a habitual felony offender. Id. at Ex. 4. The terms imposed as to Counts II and III were entered to run concurrently with the term imposed as to Count I, and Palmer received a mandatory minimum term of imprisonment of fifteen years as to Count I. Id. Palmer prosecuted a direct appeal from his convictions and sentences, raising the following claims: (1) the trial court reversibly erred in denying his pretrial motion to sever the trial on Count I from a trial on Counts II and III; and (2) the trial court erred in denying the motion for judgment of acquittal as to Count III, tampering with evidence. Id. at Ex. 6. The convictions and

_____

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] The respondent refers this Court to the Appendix in Response to the Order to Show Cause filed in Palmer's earlier habeas corpus case which was dismissed for lack of exhaustion. See Palmer v. McNeil, 08-60078-Civ-Seitz. The procedural history of this case has been gleaned from the respondent's Supplemental Appendix filed in the instant case as DE# 13 as well as the Appendix filed in the earlier habeas corpus proceeding. This Court takes judicial notice of its own records in Case No. 08-60078-Civ-Seitz at DE# 10. See Fed.R.Evid. 201.

sentences were affirmed by the appellate court in a <u>per</u> <u>curiam</u> decision without written opinion. <u>Id</u>. at Ex. 8. <u>See also</u> <u>Palmer v. State</u>, 894 So.2d 257 (Fla. 4 DCA 2005)(table).

Palmer also pursued <u>pro</u> <u>se</u> postconviction relief, filing in the trial court a motion pursuant to <u>Fla.R.Crim.P</u>. 3.850, raising the identical claims of ineffective assistance of trial counsel presented in the instant federal petition. <u>See</u> <u>Palmer v. McNeil</u>, 08-60078-Civ-Seitz at DE# 10; Ex. 10. The state filed a response to the motion with supporting exhibits, asserting that Palmer was not entitled to postconviction relief in that he had failed to demonstrate that he had received ineffective assistance of trial counsel pursuant to the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). (DE# 10; Ex. 11). By written order, the trial court summarily denied the Rule 3.850 motion for the reasons asserted by the state in its response, a copy of which was attached to the court's order. <u>Id</u>. at Ex. 12. Palmer's timely <u>pro</u> <u>se</u> motion for rehearing was ultimately denied. <u>Id</u>. at Ex. 13, 14. Palmer took an appeal from the denial of postconviction relief. <u>Id</u>. at 15. The state filed a response, after which The Florida Fourth District Court of Appeal affirmed the trial court's rulings in a *per curiam* decision without written opinion. (DE# 13; Ex. 16, 17). <u>See also</u> <u>Palmer v. State</u>, 989 So.2d 649 (Fla. 4 DCA 2008). Palmer's subsequent motion for rehearing was denied, and the mandate issued on October 3, 2008. (DE# 13; Ex. 18, 19, 20).

Soon after the state appellate proceedings had concluded, Palmer returned to this Court,[3] filing the instant <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to §2254. The respondent

---

[3] While his state postconviction proceedings were ongoing in the state courts, Palmer came to this Court instituting his first federal habeas corpus proceeding pursuant to 28 U.S.C. §2254. <u>See</u> <u>Palmer v. McNeil</u>, No. 08-60078-Civ-Seitz. The petition was dismissed without prejudice for lack of exhaustion.

rightfully does not challenge the timeliness of this petition. <u>See</u> 28 U.S.C. §2244(d). The respondent further concedes that the claims of the instant petition have been properly exhausted and are not subject to any procedural bar. <u>See</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[4] <u>See also</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).[5]

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and

---

[4]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert.</u> <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. <u>See</u> <u>Caraballo v. State</u>, 805 So.2d 882 (Fla. 2 DCA 2001). In Florida, a claim of ineffective assistance of trial counsel cannot be raised on direct appeal and must be raised pursuant to Rule 3.850. <u>McClain v. State</u>, 629 So.2d 320 (Fla. 1 DCA 1993); <u>Loren v. State</u>, 601 So.2d 271 (Fla. 1 DCA 1992).

[5]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in Williams v. Taylor, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. See id. at 409-11. See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412, 120 S.Ct. at 1523

(majority opinion by O'Connor, J.). Findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), cert. denied, ____ U.S. ____, 128 S.Ct. 2053 (2008).

In brief, the facts of this case are as follow.[6] On December 18, 1999, Detective Carter, while employed by the Broward Sheriff's Office and dressed in plain clothes, went to a gasoline station to investigate possible criminal activity. See Trial Transcript at 98-100. As the detective approached several individuals, including Palmer, he concealed his gun and badge with his tee-shirt. Id. at 100-04. As soon as the detective made contact with Palmer, he identified himself as a police officer and spoke to Palmer. Id. at 104-05. The detective ultimately asked Palmer if he would submit to a search for drugs or weapons. Id. at 105. Palmer consented to a pat-down search. Id. As Detective Carter was conducting the search, he engaged in conversation with Palmer. Id. Since Palmer mumbled his responses, the officer became suspicious that Palmer was attempting to conceal something in his mouth. Id. at 105-06. Detective Carter then asked Palmer to open his mouth and, when Palmer did so, the detective saw broken pieces of crack cocaine. Id. at 106-07. As the detective reached towards Palmer's mouth, Palmer pushed him in the chest. Id. at 107. Palmer took off on foot

---

[6]For a more detailed recitation of the facts of the case with citations to the trial transcript, see the briefs filed in the direct appeal proceeding. See Palmer v. McNeil, 08-60078-Civ-Seitz at DE# 10; Ex. 6, 7. While the entire trial transcript has not been included as part of the record in this case or earlier habeas corpus case, all pertinent portions of the trial transcript were submitted in the earlier case. See DE# 10; Ex. 2, 11. The omitted portions of the trial transcript include opening statements (i.e., pages 86-97) and jury instructions through verdict (i.e., pages 286 to end). Accordingly, the entire jury selection proceeding has been filed as well as all evidentiary proceedings and closing argument (i.e. pages 1-86, 98-286).

and he was pursued by Detective Carter and backup officers that had just arrived on the scene. Id. at 107-08.

As Palmer was running, he attempted to open the doors of several cars which were stopped in traffic. Id. at 108-09. He was successful in opening the door of a car driven by a Ms. Mendez, but was unsuccessful in evicting her from her car, although he had grabbed her by the arm and pulled her partially out of her car. Id. at 109-10. Soon thereafter, officers captured Palmer. Id. at 110. When he was handcuffed, Palmer stated that he had swallowed marijuana. Id. at 111. Detective Carter testified that he saw no signs of marijuana. Id. At the police station, after he had been advised of his constitutional rights pursuant to Miranda and after he had waived those rights, Palmer gave a taped statement to Detective Barrionuevo that was played for the jury. Id. at 201-23. He said that he had a marijuana "roach" in his mouth, that he swallowed the marijuana, and that he panicked and ran. Id. at 216-18, 222. Palmer denied pushing Detective Carter and said that he thought that Ms. Mendez was a friend of his and did not realize that he was mistaken until he had opened the door to the car. Id. at 218-22.

Palmer claims that he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.[7] Strickland v. Washington, 466 U.S. 668 (1984). A habeas

_____

[7]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections,

court's review of a claim under the *Strickland* standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009), *citing*, <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Id</u>. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>

Palmer claims in ground one that his lawyer improperly failed to file a pre-trial motion to suppress his confession/statements based upon an inadequate *Miranda*-warning. More specifically, he claims he was never informed that he had a constitutional right to have counsel present during interrogation and/or that he could stop the interrogation at any time. Palmer's claim here is based upon the Florida Fourth District Court of Appeal's decision issued on May 26, 2004, in <u>Roberts v. State</u>, 874 So.2d 1225 (Fla. 4 DCA 2004), *rev. denied sub nom.* <u>State v. West</u>, 892 So.2d 1014 (Fla. 2005) where the state appellate court held that the Broward County Sheriff's Office Miranda-warning utilized in that case, which is substantially similar to the one utilized in the instant case,[8] was

---

290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

[8]The subject *Miranda*-rights waiver form advised Palmer as follows:

One, you have the right to remain silent.

misleading and inadequate to fully inform a suspect of his constitutional right to counsel during interrogation.

In the state postconviction proceedings, Palmer also expressly relied upon *Roberts*. The state responded to the motion, arguing that even if trial counsel's performance in 2002-03 could be deemed deficient, Palmer had still failed to satisfy the second prong of *Strickland*, prejudice. See State's Response to Defendant's Motion for Post Conviction Relief at 3-6 filed in Palmer v. McNeil, 08-60078-Civ-Seitz at DE# 10; Ex. 11. The state asserted that the version of events set out in the tape-recorded statement was not materially different from the other evidence admitted at trial. Id. In other words, the testimony of state witnesses Detective Carter, back-up officer Deputy Connors and Susan Mendez, independent of Palmer's statement, would have been more than sufficient to sustain Palmer's convictions. The trial court agreed with the state and denied relief on this claim "for the reasons contained in the State's response." See Palmer v. McNeil, 08-60078-Civ-Seitz at DE# 10; Ex. 12.

For the reasons expressed by the state courts, as well as the additional reasons stated herein, Palmer has failed to demonstrate that he received ineffective assistance of trial counsel. See

---

Two, anything you say can be used against you in a court of law.

Three, you have the right to talk to a lawyer and have a lawyer present *before* any questioning.

Four, if you cannot afford a lawyer, one will be appointed to represent you before any questioning, if you wish.

(emphasis added). See Trial Transcript at 202-03, attached as an exhibit to State's Response to Defendant's Motion for Post Conviction Relief in Palmer v. McNeil, 08-60078-Civ-Seitz at DE# 10; Ex. 11. Immediately after he was advised of the above-listed rights, Palmer was asked if he understood each of his rights. (Trial Transcript at 203). He indicated in writing that he had understood each right read to him. Id.

Strickland, supra. It is well settled that an attorney's failure to anticipate a change in the law cannot form the basis for a claim of ineffective assistance. United States v. Ardley, 273 F.3d 991, 993 (11 Cir. 2001); Funchess v. Wainwright, 772 F.2d 682, 691 (11 Cir. 1985). Palmer was interrogated on December 18, 1999, the trial proceedings commenced on April 21, 2003, he was convicted and sentenced in June 2003, and his convictions became final on March 4, 2005, when the mandate issued following his direct appeal.[9] See Palmer v. McNeil, 08-60078-Civ-Seitz at DE# 10; Ex. 3, 4, 9. While the opinion in *Roberts* was issued on May 26, 2004, with rehearing denied July 2, 2004, during the pendency of the direct appeal proceeding in this case, trial counsel cannot be faulted for failing to foresee that the standard rights waiver form then used would be invalidated more than four years after the subject questioning and arrest.

Under *Strickland*, an attorney's performance is to be measured on reasonableness under prevailing professional norms. Strickland, 466 U.S. 688. Because counsel's failure to challenge the standard waiver form years before it was held to be deficient was reasonable under the professional norms prevailing at that time, it did not amount to constitutionally deficient representation for failing to raise the issue and for failing to preserve it for appellate review. See Anthony v. State, 980 So.2d 610 (Fla. 4 DCA 2008)(holding that trial counsel's failure to move to suppress defendant's statements to police on grounds of *Miranda* violation involved in *Roberts* decision was not ineffective assistance,

---

[9]Under Florida law, a conviction becomes final upon issuance of the mandate following direct appeal. Jones v. State, 602 So.2d 606 (Fla. 1 DCA 1992); Hilbert v. State, 540 So.2d 227 (Fla. 1 DCA 1989). See also Beaty v. State, 701 So.2d 856 (Fla. 1997)(finding that, where a defendant's plenary appeal had been per curiam affirmed without written opinion or citation, the two-year period for purposes of filing a motion for postconviction relief began to run from the issuance of the district court's mandate, rather than from the Supreme Court's denial of discretionary review).

because *Miranda* deficiency was not obvious and was subject of disagreement among appellate courts and judges).[10]

Moreover, as determined by the state courts, even if this Court were to find trial counsel's performance deficient, as alleged, Palmer's pre-trial statement to the police did not affect the outcome of his trial. Here, portions of the tape-recorded statement could be viewed as exculpatory, rather than inculpatory. Palmer denied committing all or some of the offenses with which he was charged. Further, it is interesting to note that portions of the tape-recorded statement were referred to by trial counsel during closing argument in an attempt to support the defense with regard to the charge of battery on a law enforcement officer. See Trial Transcript at 245-49. Trial counsel pointed out that during the interrogation, Palmer denied several times that he knew that Detective Carter was in fact a police officer and he only appeared to admit that he knew of the officer's status after repeated questioning and pressure by the interrogating officer. Id. at 245-

_____

[10]It is noted that the Florida Supreme Court has more recently held in State v. Powell, 998 So.2d 531 (Fla. September 29, 2008) that *Miranda*-warnings informing a defendant that he had the right to talk to a lawyer "before any questioning," and that he could use that right at any time during the interview, were insufficient to inform defendant of his right to have counsel present during questioning. *Powell*, however, did not involve the Broward County Sheriff's Office Miranda-rights card, but the Tampa police standard police department form used during interrogation which did not explicitly indicate that a suspect had the right to have an attorney present during questioning. Id. Both the Florida Supreme Court and the United States Supreme Court have thus far declined to review cases ruling on the constitutionality of the Broward County Sheriff's Office's Miranda rights card. See Bross v. State, 898 So.2d 1027, 1027 n.2 (Fla. 4 DCA 2005), citing, Franklin v. State, 876 So.2d 607 (Fla. 4 DCA 2004)(noting that Miranda form used by Broward County Sheriff's Office was only one of ninety rights forms obtained from federal and state law enforcement agencies introduced in evidence that failed to indicate that the suspect could consult with a lawyer during questioning), cert. denied, 543 U.S. 1081 (2005). Moreover, the Florida courts have declined to make the *Roberts* decision retroactively applicable to cases on collateral review. See Ulcena v. State, 925 So.2d 346 (Fla. 4 DCA 2006). It is also noted, however, that the United States Supreme Court on June 22, 2009, granted the State of Florida *certiorari* review in *Powell* and the case remains pending. See Florida v. Powell, ___ U.S. ___, 129 S.Ct. 2827, 174 L.Ed.2d 551 (2009).

46. Finally, the testimony of the officers, civilian victim and eyewitnesses was more than sufficient to sustain the convictions in this case. See Jackson v. Virginia, 443 U.S. 307 (1979). Under the circumstances of this case, where there was otherwise sufficient evidence to support the convictions, the admission of the tape-recorded post-arrest statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).[11]

This Court further points out that, even if trial counsel's performance could be deemed deficient for failing to challenge the subject waiver form on the basis now raised, under currently established federal and Florida law, Palmer suffered no prejudice for his failure to do so for alternate reasons than found by the state courts. The determinative question is whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. North Carolina v. Butler, 441 U.S. 369, 373 (1979); accord, Thomas v. State, 894 So.2d 126, 136 (Fla. 2004). In *Miranda*, the Supreme Court held, among other things, that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to *have the lawyer with him during interrogation*." Miranda, 384 U.S. at 471, 86 S.Ct. at 1626 (emphasis added). However, the Supreme Court "has never

_____

[11]The Florida Supreme Court held on January 30, 2009, that despite its earlier holding in State v. Powell, 998 So.2d 531 (Fla. 2008) and despite a finding that a defendant was provided with a defective *Miranda*-warning in that the warning failed to advise the defendant of his right to counsel during his custodial interrogation, the erroneous admission of a confession during trial remains subject to harmless-error review. Rigterink v. State, 2 So.3d 221 (Fla. 2009). It is noted that on March 25, 2009, the United States Supreme Court entered a stay in *Rigterink* in order to give the state an opportunity to seek review, see Florida v. Rigterink, 129 S.Ct. 1667, 77 U.S.L.W. 3542 (March 25, 2009), and the state shortly thereafter filed a petition for certiorari review.

indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant[,]" so "no talismanic incantation [is] required to satisfy its strictures." <u>California v. Prysock</u>, 453 U.S. 355, 359 (1981). The inquiry is simply whether the warnings reasonably '"conve[y] to [a suspect] his rights as required by *Miranda*."' <u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989)(brackets in original)(quoting *Prysock*, 453 U.S. at 361). Thus, so long as the warning given to a defendant adequately fulfills *Miranda*'s substantive requirements, it is sufficient. <u>Id</u>. at 203. The Fifth Circuit Court of Appeals in a habeas corpus proceeding has rejected a similar claim and has found a warning similar to the one used in the instant case constitutionally sufficient pursuant to *Miranda*. <u>See</u> <u>Bridgers v. Dretke</u>, 431 F.3d 853 (5 Cir. 2005)(holding that state appellate court's conclusion that *Miranda* warnings given to defendant before custodial interrogation, which stated that defendant had right to presence of counsel prior to questioning but did not explicitly state that he had right to attorney during questioning, were adequate was not unreasonable application of clearly established federal law, as would warrant federal habeas relief), *cert. denied sub nom.*, <u>Bridgers v. Quarterman</u>, 548 U.S. 909 (2006).

Palmer was advised that he had the right to talk with a lawyer present before any questioning and that if he could not afford a lawyer, one would be appointed to represent him before any questioning, if he wished. <u>See</u> Trial Transcript at 201-06. At the bottom of the waiver form used here, where Palmer affixed his signature, the form stated:

> I have read the statement of my rights or have had it read to me and I understand what my rights are. With these rights in mind, *I am willing to answer questions without a lawyer present*. This waiver of rights is signed of my own freewill [sic] without any threats or promises having been made to me.

(emphasis added). Id. at 204. Immediately after he was advised of his rights, as set forth *infra* in footnote 8, Palmer was asked if he understood each of his rights and he answered affirmatively and agreed to talk to the officer. Id. at After receiving all of his rights, Palmer was willing to talk to the officer without an attorney present. Id. at 204-05. Under these circumstances, it is apparent that even if the wording of the rights waiver card was deficient, Palmer was still apprised of the substantive rights he possessed under *Miranda*, including his entitlement to have a lawyer present during questioning and that such statement could be used against him at trial. Palmer voluntarily waived his rights and agreed to speak to the police.

Since the *Miranda* warnings that were actually administered in this case were constitutionally adequate, under current principles, Palmer cannot show that he was prejudiced when his lawyer failed to challenge the wording of the waiver form, because such an argument rightfully would have been unavailing. See Canete v. State, 921 So.2d 687 (Fla. 4 DCA)(although defendant was not apprised expressly that he had the right to have an attorney present "during" or "while" questioning, warning given contained the functional equivalent and was sufficient to convey this right to a person of ordinary intelligence and common understanding, therefore, motion to suppress rightfully denied), rev. denied, 944 So.2d 986 (Fla. November 20, 2006), citing, Duckworth v. Eagan, 492 U.S. 195, 203 (1989). It is well settled that there is no duty to raise issues which have little or no chance of success. See Knowles v. Mirzayance, ____ U.S. ____, 129 S.Ct. at 1420-22 (stating that Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success). See also Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-

14

meritorious objection); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). More specifically, federal law recognizes that "[c]ounsel cannot have been ineffective for failing to pursue ... a meritless suppression motion."[12] <u>United States v. Stewart</u>, 388 F.3d 1079, 1085 (7 Cir. 2004). Defense counsel's performance was, therefore, not constitutionally ineffective with regard to the statements given by Palmer to the police. <u>See</u> <u>Strickland</u>, <u>supra</u>.

Palmer claims in ground two that his lawyer improperly failed to object and challenge for cause biased juror Joanie Walker. Specifically, Palmer alleges that juror Walker indicated during *voir dire* that she had family and friends in the legal profession and law enforcement, that she had been the victim of crime, and that her beliefs prevented her from giving Palmer a fair trial. This claim was raised during the postconviction proceeding and rejected as meritless by the state courts.

---

[12]There is currently a split among the circuits with respect to whether the warning must explicitly provide that a suspect is entitled to the presence of counsel during interrogation. <u>See</u> <u>Bridgers v. Dretke</u>, 431 F.3d 853, 859 (5 Cir. 2005), <u>cert</u>. <u>denied</u>, 548 U.S. 909 (2006). The Fifth Circuit, like the Sixth, Ninth, and Tenth Circuits, has interpreted *Miranda* to require a more explicit warning, indicating that a suspect is entitled to counsel during questioning. <u>Id</u>., <u>citing</u>, <u>Atwell v. United States</u>, 398 F.2d 507, 510 (5 Cir. 1968); <u>United States v. Tillman</u>, 963 F.2d 137, 140-42 (6 Cir. 1992); <u>United States v. Noti</u>, 731 F.2d 610, 615 (9 Cir. 1984); <u>United States v. Anthon</u>, 648 F.2d 669, 672-74 (10 Cir. 1981). On the other hand, the Second, Fourth, Seventh, and Eighth Circuits under various circumstances have held that warnings are adequate without explicitly stating that the right to counsel includes having counsel present during the interrogation. <u>Id</u>., <u>citing</u>, <u>United States v. Vanterpool</u>, 394 F.2d 697, 698-99 (2 Cir. 1968); <u>United States v. Frankson</u>, 83 F.3d 79, 81-82 (4 Cir. 1996); <u>cf</u>. <u>United States v. Adams</u>, 484 F.2d 357, 361-62 (7 Cir. 1973)(finding warning adequate but stating that warnings provided to suspects on the street are not expected to be as precise as those given at the police station); <u>United States v. Caldwell</u>, 954 F.2d 496, 500-04 (8 Cir. 1992)(finding no plain error when warning omitted right to counsel during interrogation).

Review of the transcript of the *voir dire* proceedings reveals that juror Walker provided in pertinent part the following information to the court:

> I've been living in Broward County for 19 years. Originally from Florida. I work at Jackson Memorial Hospital, health information management department. My profession does not influence my ability to be fair or impartial. I'm not married. I'm single. I do have family and friends in the legal profession. I do have family and friends involved in the law enforcement profession. I've never served as a juror. I have no family member or close friend whatsoever been charged with a crime. Not that I'm aware of. I have been a victim of a crime. Not relevant to this case. No, I do not have any physical problems that might prevent me from being a fair juror. Do I have any beliefs that would prevent me from giving a defendant a fair trial. I'm not sure even because I've been a victim. It would - - it's a possibility. Yes and no.
>
>    *    *    *
>
> Yes. I can follow the Court's instructions.

(Trial Transcript at 25-6).[13]

After all prospective jurors had supplied the court with the personal information as requested in the juror questionnaire and had been questioned by counsel, Walker addressed the court outside the presence of the other venirepersons. Id. at 71-3. Walker then told the court and counsel that she did not have anything personal to add, only that she was concerned that the trial schedule might interfere with her upcoming college finals and registration that day for the following semester. Id. The trial court reassured Walker that the court schedule would not interfere with either her finals or registration, and she indicated that she was satisfied with the court's responses. Id. During the strike conference, the prosecutor expressed concerns about Walker, stating that she might

---

[13]As indicated copy of the transcript of the entire *voir dire* proceeding can be found at <u>Palmer v. McNeil</u>, 08-60078-Civ-Seitz at DE# 10; Ex. 2.

not focus on the case due to the pressures associated with school. Id. at 77. The court responded, "I'm not excusing her for cause. She said she has to be out of here at 5 on Wednesday. That's not a problem. I teach on Wednesday....Even if the jury starts to deliberate at 3:00, we break at 4." Id.

It is axiomatic that an accused is guaranteed the right to a fair trial by a panel of impartial and indifferent jurors. Irvin v. Dowd, 366 U.S. 717, 722(1961). See also Ross v. Oklahoma, 487 U.S. 81, 85 (1988) ("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury."). However, even in a case where a juror is not struck for cause, but arguably should have been, a petitioner is not entitled to relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial. See Passman v. Blackburn, 652 F.2d 559, 567 (5 Cir. 1981), cert. denied, 455 U.S. 1022 (1982). But see Johnson v. Armontrout, 961 F.2d 748, 755 (8 Cir. 1992)(holding that absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel). In Florida, the test for whether a juror is competent is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instruction on the law given to him [or her] by the court."[14] Turner v. State, 645 So.2d 444, 446 (Fla. 1994).

Palmer has failed to demonstrate that by allowing Walker to serve on the jury counsel impinged upon the fundamental fairness of his trial. After review of the *voir dire* proceeding in its entirety

---

[14]Similarly, in the federal courts, a juror can be dismissed when just cause exists (i.e., when that juror refuses to apply the law or to follow the court's instructions). See generally United States v. Abell, 271 F.3d 1286, 1302 (11 Cir.2001), cert. denied, 537 U.S. 813 (2002).

with specific attention paid to this particular juror (Trial Transcript at 1-80), it is apparent from the responses given to the questions posed by the juror questionnaire and counsel for defense and the state that the challenged juror could be fair and impartial, that Joanie Walker could follow the law as instructed by the court, and that she had no fixed belief in Palmer's guilt. It is true that Walker's comments regarding whether she could give Palmer a fair trial might be viewed as equivocal and trial counsel did not ask any follow-up questions of Walker with regard to the subject statement. However, Walker did unequivocally state she could follow the court's instructions, which would necessarily include the presumption of innocence, the burden of proof, etc., and she also unequivocally offered the information that the case where she had been the victim was not relevant to the instant case.

Further, during questioning by the state, the state explained the concept of reasonable doubt and the state's burden in the case, and when the prosecutor asked if anyone had a problem with that concept, Walker remained silent. Id. at 37-8. Trial counsel explained the presumption of innocence, and noted that "[s]o we all can agree that because Mr. Palmer sits at that table, he's not guilty of anything? Can we all agree to that?" Id. at 53. Walker again remained silent. Id. By remaining silent, it is clear that Walker understood and agreed with the concepts of reasonable doubt and presumption of innocence. Trial counsel also asked the group whether the nature of the charges, as read to them by the court from the Information, caused anyone to feel as if he or she could not be fair or could not serve as a juror based upon the nature of the crimes charged. Id. at 67-71. Walker once again remained silent. Id.

Since there was no legal basis upon which to challenge the subject juror, the fact that defense counsel failed to do so does not demonstrate that counsel's performance was constitutionally ineffective in that any challenge would not have been successful. It is noted that it appears from the record that the trial court was not amendable to striking for cause the particular juror, as indicated by the court's responses to the state when the state expressed some concern about Walker's ability to focus on the trial. As stated above, counsel has no duty to raise issues which have little or no chance of success. See generally, Knowles v. Mirzayance, __ U.S. ___, 129 S.Ct. at 1420-22; Chandler v. Moore, 240 F.3d at 917; Card v. Dugger, 911 F.2d at 1520. Further, the record does not demonstrate that the decision to keep the subject individual as a juror was rooted in anything other than sound trial strategy based upon the circumstances of the case. Palmer was present for jury selection, he conferred with counsel during the *voir dire* proceeding and the strike conference and he voiced no objection to this juror. See Trial Transcript at 67, 73, 73-8.

In fact, at the close of the selection process, the court asked Palmer if he agreed with those selected as jurors, and he unequivocally answered in the affirmative. Id. at 78. When counsel next asked Palmer whether he had participated in the entire jury selection process, he again answered affirmatively. Id. And, when counsel asked Palmer whether they had discussed every juror that was struck or kept in the case and whether he had given counsel input as to the jurors to select, Palmer answered both inquiries with, "Yes." Id. Therefore, Palmer, at the very least, acquiesced in the strategy employed not to strike the subject juror.

There is no indication whatever in the record that the venire was composed in an unconstitutional manner and/or the jury

selection process was conducted in an unconstitutional manner. Also, after having been selected as jurors, the jurors were advised by the court that their duty was to decide the case based solely on the evidence presented and that they must follow the law, as instructed by the court. See Trial Transcript at 80-3. The court also advised the jurors that they should not form any definite or fixed opinion as to the merits of the case until they had received all the evidence, the argument of counsel, and the court's instructions on the law. Id. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Finally, since there is overwhelming evidence supporting Palmer's convictions in this case, he suffered no prejudice as a result of the alleged inaction. See Baldwin v. Johnson, 152 F.3d 1304, 1315 (11 Cir. 1998)(holding that defense counsel's failure to challenge prosecutor's use of peremptory strikes did not constitute ineffective assistance of counsel since such decision was reasonable under law which existed at the time, and defendant failed to show prejudice in that there was overwhelming evidence of guilt), cert. denied, 526 U.S. 1047 (1999). Accordingly, the record does not demonstrate ineffective assistance from his lawyer with regard to this juror. Defense counsel's action, or inaction, will not support a claim of ineffective assistance. Strickland, supra.

Palmer claims in ground three that his lawyer rendered ineffective assistance when he failed to investigate the facts of the case and subpoena and call two exculpatory eyewitnesses, Nancy Brannon and Charlotte Beard, to testify for the defense at trial for the purpose of supporting his necessity defense. Palmer had been dating Charlotte and Nancy was Charlotte's friend. See Trial Transcript at 210-12. Palmer stated in his post-arrest statement that these two woman were seated in a car parked at the gasoline

20

station and he was speaking to them before Detective Carter approached him. Id. Palmer claims that Charlotte and Nancy, if they had been called as defense witnesses, would have testified that Detective Carter had not identified himself as a law enforcement officer before the altercation with Palmer. He further states that the prospective witnesses would have testified that Detective Carter precipitated the incident by gabbing Palmer's shoulder and that it was not apparent from the officer's dress that he was a police officer.

A decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed. Conklin v. Schofield, 366 F. 3d 1193, 1204 (11 Cir. 2004), cert. denied, 544 U. S. 952 (2005). See also Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy); United States v. Guerra, 628 F.2d 410, 413 (5 Cir. 1980)("Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative"). Accordingly, complaints of uncalled witnesses are not favored. Buckelew v. United States, 575 F.2d 515, 521 (5 Cir. 1978). See also White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.")

It is evident from full review of the record that trial counsel did properly investigate the facts of the case and had

investigated   all   possible   defenses,   contrary   to   Palmer's assertion.[15] Such preparedness and command for the facts of the case are evident by counsel's thorough and meticulous cross-examination of the state witnesses, and argument to the jury. Moreover, trial counsel was certainly aware of the subject two women and had listed at least one of them on the defense witness list as a possible witness (i.e., Charlotte Beard), as indicated immediately below.

As to counsel's failure to call the two women as defense witnesses, it is evident from the record that trial counsel chose as a matter of trial strategy not to call the two subject prospective witnesses. To have called *any* defense witness would have been contrary to the agreed-upon defense raised at trial. After the state had rested its case and a motion for judgment of acquittal was denied, the trial court asked whether defenses witnesses were ready to testify. Id. at 234. Trial counsel requested and was granted a brief recess  to further discuss the issue with Palmer, after which he indicated to the court that the defense was not calling any witnesses and the defense would rest. Id. The trial court next advised Palmer that he had the absolute right to testify as a witness in his own behalf and the absolute right not to testify. Id. When asked whether he wanted to testify, Palmer ultimately answered that he did not. Id. at 234-35.

---

[15]Effective assistance of counsel embraces adequate pretrial investigation. See Strickland v. Washington, 466 U.S. 668, 691 (1984)(stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." See also McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18 (11 Cir.), cert. denied, 469 U.S. 870 (1984). See also Crawford v. Head, 311 F.3d 1288, 1297 (11 Cir. 2002).

The court went on to advise Palmer that he had potential witnesses and asked Palmer if he had had an opportunity to discuss with counsel whether to call or not call those witnesses, informing Palmer that counsel had wanted to rest. Id. at 235. When Palmer did not give a definite answer, the following extensive colloquy took place between trial counsel Simon and Palmer:

MR. SIMON:     Mr. Palmer, I just explained to you that we were going to have Ms. Beard as a witness this morning and we just talked about it.

THE DEFENDANT:  Right.

MR. SIMON:     I explained to you the pros of calling her and not calling her, is that correct?

THE DEFENDANT:  Yes.

MR. SIMON:     I told you what happens if you call her and what happens if you don't call her, correct?

THE DEFENDANT:  Yes.

MR. SIMON:     We talked about what her testimony would add or wouldn't add, correct?

THE DEFENDANT:  Yes.

MR. SIMON:     We talked about that the State can call rebuttal witnesses, the two officers. Connors and Carter can be called by the State as rebuttal witnesses. Have I explained this to you?

THE DEFENDANT:  Yes.

MR. SIMON:     I've explained everything about what we talked about yesterday about you testifying or not testifying, we went through all that, correct?

THE DEFENDANT:  Yes.

MR. SIMON:     I went over inside and out with regard to the witnesses coming in and everything, correct?

THE DEFENDANT:  Yes.

```
MR. SIMON:        And you made a decision that we were not
                  going to call any witnesses that what [sic]
                  we just discussed, correct?

THE DEFENDANT:    Yes.

MR. SIMON:        Is that your decision?

THE DEFENDANT:    Yes.
```

(emphasis added). Id. at 235-36.

Thus, Palmer clearly and unequivocally agreed with trial counsel's strategy not to call defenses witnesses or, at the very least, not to call him and Charlotte as defense witnesses. Even if Palmer had merely acquiesced to defense's counsel's trial strategy not to call any defense witnesses at trial, it cannot be said that such acquiescence was anything but voluntary here. See generally Lambrix v. Singletary, 72 F.3d 1500, 1508 (11 Cir. 1996)("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary."), aff'd, 520 U.S. 518 (1997). Counsel did not fall below the *Strickland* standard by employing a legitimate trial strategy, which consisted of presenting the agreed-upon defense by way of cross-examination of the state witnesses and argument at trial,[16] regardless of the result for his client.

---

[16]Counsel's decision against calling witnesses and presenting evidence at trial may have been a strategic decision so that the defense would be afforded both the first and last closing arguments to the jury. This Court must be highly deferential to such strategic decisions of counsel, which decision was clearly reasonable under the circumstances of this case, not amounting to constitutionally ineffective representation. See Kelley v. Secretary for Dept. of Corrections, 377 F.3d 1317, 1353 (11 Cir. 2004)(finding petitioner not prejudiced by any deficient performance by counsel where counsel adequately investigated case, and counsel elected, as matter of defense strategy, to not put on defense witnesses so that they might take advantage of state procedural rule allowing defendant to make first and last closing arguments when defense is not presented), cert. denied, 545 U.S. 1149 (2005). It is noted that effective May 3, 2007, the law in Florida has changed in that the statute now provides that in accord with the common law, the prosecuting attorney may open the closing

Moreover, even if trial counsel's performance could be viewed as deficient for failing to call Nancy and/or Charlotte as defense witnesses, Palmer cannot satisfy the second prong of *Strickland*, prejudice.[17] The now-proffered testimony would have had no impact on the outcome of this case and would not have materially supported the defense with regard to the battery on a law enforcement officer. Detective Carter admitted during his direct testimony that he had not initially identified himself as a police officer. See Trial Transcript at 100. He testified that at the time of the incident, he had been driving an unmarked vehicle; and that he was in plain clothes, wearing shorts and a tee-shirt, so that his dress would not have indicated that he was a police officer. Id. at 100-01. The detective further testified that he wore a gun and badge at all times and that when he approached Palmer, he had covered his gun and badge with his tee-shirt to ensure that Palmer did not see that he was an approaching officer.[18]   Id. at 100, 103. During

---

arguments, the defendant or his or her attorney may reply, and the prosecuting attorney may reply in rebuttal. See Fla.R.Crim.P. 3.381. See also In re: Amendments, 957 So. 2d 1164 (Fla. 2007).

[17]The prejudice component of the Strickland test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 694 (1984) A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id. See also Knowles v. Mirzayance, ___ U.S. ___, ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009) ("To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.")(internal quotation marks and citation omitted). The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established. See Brown v. Head, 272 F.3d 1308, 1313 (11 Cir. 2001), cert. denied, 537 U.S. 978 (2002).

[18]The detective did go on to testify that he concealed his identity to prevent evidence from being destroyed and to prevent suspects from fleeing. See Trial Transcript at 103-04. He further testified that after the initial contact, and before backup officers arrived in marked police vehicles, he did in fact

forceful cross-examination, trial counsel reiterated the detective's earlier testimony that he had concealed his identity to Palmer.[19] <u>Id</u>. at 116-17. Again during closing argument, trial counsel attacked the credibility of Detective Carter and the truthfulness of his testimony and emphasized the portion of the

---

identify himself as a police officer to Palmer. <u>Id</u>. at 104. He testified that he fully exposed his gun and badge, and he introduced himself as Detective Carter with the Broward Sheriff's Office. <u>Id</u>.

[19]The following exchange took place during cross-examination:

Q.   Now, on [the subject date], your testimony is that you parked an unmarked car away from Mr. Palmer and the other vehicles so they wouldn't see you, is that correct?

A.   That's correct.

Q.   In fact, you did not want them to know, according to your testimony, that you were a police officer, correct?

A.   Not as I was approaching, no.

Q.   So you took steps to make sure that the individuals next to the pay phone didn't know you were a police officer, correct?

A.   Until I made contact with them.

                    *          *          *

     THE WITNESS:  Correct, I did not want them to know I was a police officer from the time I walked from by car until the time I approached them on the other side of the lot.

Q.   My question to you is, you took steps to conceal the fact that you were a police officer, true?

A.   Until I made contact with them, true.

Q.   One of the steps you took was to cover up your gun and badge, correct?

A.   That's correct.

Q.   And at the time you saw Mr. Palmer he was merely standing there talking to a car that had two female occupants in it, correct?

A.   Yes.

(Trial Transcript at 116-18).

detective's testimony regarding the initial concealment of his identity.[20] Id. at 240-41.

Thus, the testimony of the subject prospective witnesses would have been merely cumulative to Detective Carter's testimony regarding the battery on a law enforcement officer offense and would have had no impact whatever on the offense charged in light of the additional unequivocal testimony offered by the detective that he did in fact reveal his identity as a police officer after he had made contact with Palmer, and that he did so before the battery had been committed. See Trial Transcript at 104-08. The prospective testimony would have had no impact whatever on the other offenses charged, such as the offense of attempted carjacking. The defense with regard to the attempted carjacking was duress or necessity, and the trial court instructed the jury on

---

[20]The following excerpt from trial counsel's closing argument is illustrative of the defense presented as to the battery on a law enforcement charge:

Now, the first person that you heard from in this case was Detective Carter. And it is very important, ladies and gentlemen, that you listen and remember what he said. Now, Count 2 of the information charges Mr. Palmer with battery on a law enforcement officer. And the Judge read you the information and in that information the State has to prove that Mr. Palmer knew that Mr. Carter was a law enforcement officer.

Now, let's talk about that. Now, don't you think it's strange that Mr. Carter parks a car on the other side of the store. Don't you think it's strange that a police officer with a badge and a gun - - what did he tell [sic] he did - - he covered it up with a T-shirt. And why did he tell you he covered it up? Because he didn't want Mr. Palmer to know that he was a police officer. Well, which is it?  You're either a police officer and you want people to know you're a police officer or you're not.

Now, the only person that came in here and took this stand and told you that he didn't want him [sic] know to be a police officer is the person that they charge him with battery with. This man told you he came in here and tried to make sure no one knew he was a police officer. And yet he's charged with knowing that he was a police officer.

(Trial Transcript at 240-41).

those defenses,[21] over the state's objection. <u>See</u> Trial Transcript at 231-32, 278-79. Thus, trial counsel's failure to call the two female passengers at trial to testify as proffered did not result in prejudice to Palmer.

In other words, there is no reasonable probability that had the subject prospective witnesses testified at trial that Detective Palmer concealed his identity the outcome of the trial would have been different. <u>See generally</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11 Cir. 2002)(holding that where there is no reasonable probability that the alibi testimony would have changed the outcome of the trial, given the strength of the evidence admitted at trial, the trial court's application of <i>Strickland</i>'s prejudice prong in postconviction proceeding was not objectively unreasonable). The absence of exculpatory witness testimony from a defense and/or evidence is more likely prejudicial when a conviction is based on little record evidence of guilt. <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1228 (11 Cir. 2002)(rejecting petitioner's ineffective assistance of counsel argument on lack of prejudice grounds despite

---

[21]In Florida, the defense of duress or coercion exists when there is evidence tending to show that the defendant committed the crime against his will because of circumstances which either constituted a real, imminent and impending danger to himself or to some loved one, or from which circumstances shown in evidence the defendant had reasonable grounds to believe that such danger was real, imminent and impending, and did so believe at the time the crime was committed, and therefore committed the crime because of such belief. <u>Stevens v. State</u>, 397 So.2d 324, 325 (Fla. 5 DCA 1981). The essential elements of the defense of necessity are as follow: (1) that the defendant reasonably believed that his action was necessary to avoid an imminent threat of death or serious bodily injury to himself or others, (2) that the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct, (3) that there existed no other adequate means to avoid the threatened harm except the criminal conduct, (4) that the harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it, and (5) that the defendant ceased the criminal conduct as soon as the necessity or apparent necessity for it ended. <u>Bozeman v. State</u>, 714 So.2d 570, 572 (Fla. 1 DCA 1998).

"no conclusive forensic or eyewitness evidence" because of petitioner's "multiple uncoerced confessions"). That is not the situation here, as indicated throughout this Report. Palmer, therefore, did not receive ineffective assistance of trial counsel pursuant to the *Strickland*-standard, as alleged in ground three.

Palmer also claims that the cumulative effect of trial counsel's errors deprived him of his state and federal constitutional rights to due process of law. This claim is meritless. For the reasons stated above, Petitioner is not entitled to habeas corpus relief on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors, neither individually nor cumulatively, infused the trial with unfairness as to deny Petitioner a fundamentally fair trial and due process of law. Petitioner is not entitled to habeas corpus relief. See <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also</u> <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect.") Contrary to Palmer's apparent assertion, the result of the trial was not fundamentally unfair or unreliable. See <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993). The fact that the defense presented at trial was not successful does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the

prosecution's case to meaningful adversarial testing.[22] <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).

In conclusion, the denial of postconviction relief by the trial court on the identical grounds of ineffective assistance of trial counsel raised here, which ruling was affirmed by the state appellate court, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>See Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>See also</u> <u>Knowles</u>, ____ U.S. ____, 129 S.Ct. 1411 (2009).

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 11th day of September, 2009.

_____

UNITED STATES MAGISTRATE JUDGE

---

[22]It appears that Palmer might be attempting to raise a claim pursuant to <u>United States v. Cronic</u>, 466 U.S. 648 (1984). In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. <u>Id</u>. at 659. When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of prejudice is required. <u>Id</u>. The Eleventh Circuit applies the <u>Cronic</u> dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," <u>Chadwick v. Green</u>, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether or not the accused was denied a fair trial. <u>Hammonds v. Newsome</u>, 816 F.2d 611, 613 (11 Cir. 1987). In this case, Palmer was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the state's case to a meaningful challenge.

cc:  Roland Palmer, <u>Pro</u> <u>Se</u>
     DC# 188167
     Moore Haven Correctional Facility
     P. O. Box 718501
     1900 East State Road 78 NW
     Moore Haven, FL 33471

     Mitchell A. Egber, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428